Riccitelli v. Water Pik                     CV-00-531-M   10/04/01  P

**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE**


Shawn Riccitelli, et al.

    v.                                      Civil No. 00-531-M
                                        Opinion No. 2001 DNH 199
Water Pik Technologies, Inc. and
Laars, Inc.


**O R D E R**

Defendants move under Fed. R. Civ. P. 14 to implead two third-party defendants in order to assert claims for contribution under New Hampshire statutory law and claims for indemnity. (document no. 33).  The plaintiff objects.

Discussion

Because the defendants did not serve their third-party complaint within ten (10) days of their answer they must obtain leave of court to proceed.  See Fed. R. Civ. P. 14(a).  The decision as to whether to allow impleader "is left to the informed discretion of the district court, which should allow impleader on any colorable claim of derivative liability that will not unduly delay or otherwise prejudice the ongoing proceedings."  Lehman v. Revolution Portfolio L.L.C., 166 F.3d 389, 393 (1st Cir. 1999)(citations omitted).

1. <u>Colorable Claims</u>

    a. <u>Contribution Claims</u>

Defendants seek contribution against Unifin International, Inc. ("Unifin"), the manufacturer of the finning machine that allegedly caused the harm in this case, for negligent design and manufacture (Count II) and for failure to warn (Counts III and IV). Essentially, these claims allege that Unifin failed to guard against and warn of dangers posed by the absence of protective devices on the finning machine. The defendants also seek contribution against Unifin based upon breach of express and implied warranties that the machine was fit for a particular purpose (Counts VI and VIII).

In addition, the defendants seek contribution from Agentry Staffing Services ("Agentry"), a temporary employment service that placed the plaintiff at the defendants' manufacturing facility where he was injured. Specifically, the defendants seek contribution against Agentry based on Agentry's alleged breach of contractual obligations to insure the defendants and to monitor compliance with safety measures regarding the finning machine (Count X). They further seek contribution against Agentry based upon Agentry's alleged breach of a duty to supervise and ensure

2

the safety of work areas within defendants' facility and a duty to advise the defendants of potential hazards (Count XI).

In Connors v. Suburban Propane Co., 916 F. Supp. 73, 81 (D.N.H. 1996)(McAuliffe, J.), this court ruled that "Fed. R. Civ. P. 14 cannot be invoked, without plaintiffs' consent, to bring a contribution action premised on N.H. Rev. Stat. Ann. [("RSA")] § 507:7-f & g against a third-party defendant in [a] diversity action." According to the Connors court, permitting the use of Rule 14 to implead third-party contribution defendants without the plaintiff's consent would violate the Rules Enabling Act, 28 U.S.C. § 2072, by limiting the plaintiff's substantive right under state law to control which parties may participate in the litigation. See id. Under Connors, therefore, the defendants would need to seek contribution from Unifin and Agentry in a separate action.

I am not inclined to disregard Judge McAuliffe's decision in Connors, although I recognize that the conclusion in that case has been called into question. See Chapman v. Therriault, 1998 WL 1110691 *2-3 (D.N.H. 1998)(rejecting the court's conclusion in Connors that the plaintiff's right of consent under RSA § 507:7 is substantive, and finding that the Federal Rules of Civil

Procedure preempt the procedural requirements of the New Hampshire contribution statute); 3 MOORE'S FEDERAL PRACTICE, §§ 14.05[2] & 14.07 (3d ed. 2001)("While the [Connors] opinion is carefully and thoughtfully crafted, the conclusion seems debatable."). Nevertheless, it is unnecessary to evaluate at this time whether Connors remains good law. Even assuming Fed. R. Civ. P. 14 preempts New Hampshire's contribution statute and the defendants' have asserted colorable contribution claims,[1] the

---

[1]On its face, the defendants' proposed third-party complaint alleges colorable contribution claims against Unifin. It does not, however, assert colorable claims against Agentry. Pursuant to RSA 507:7-f, "a right of contribution exists between or among 2 or more persons who are jointly and severally liable upon the same indivisible claim, or otherwise liable for the same injury, death or harm, whether or not judgment has been recovered against all or any of them." The defendants have failed to explain how their claim that Agentry breached a contractual obligation to insure the defendants, asserted in Count X, gives rise to a contribution action under New Hampshire law. As for the defendants' claim that Agentry breached a contractual obligation to develop safety programs and monitor compliance with safety procedures on the plant floor, the defendants have failed to demonstrate the existence of such a contract. Nothing in the defendants' exhibits indicates that Agentry was contractually obligated to provide these services. Finally, the defendants cannot assert a contribution claim against Agentry based upon Agentry's alleged negligence, as set forth in Count XI. "The question of contribution arises only in the event there are joint tortfeasors." William H. Field Co., Inc. v. Nuroco Woodwork, Inc., 115 N.H. 632, 634 (1975). Because the New Hampshire Workers' Compensation Act precludes Agentry from being held liable in tort to the plaintiff, Agentry cannot be a joint tortfeasor with the defendants. See id. at 634-35. See also Bilodeau v. Oliver Stores, Inc., 116 N.H. 83, 88 (1976)("The

4

complexity of the issues raised by the defendants' third-party complaint, and the undue delay and prejudice that would arise if the defendants were to pursue their contribution claims in this suit, support the denial of defendants' motion.

        b.   <u>Indemnity</u>

Defendants seek indemnity from Unifin based upon Unifin's allegedly negligent design and manufacture (Count I), failure to warn (Count III), breach of express and implied warranties of fitness for a particular purpose (Counts V and VII), and breach of an implied warranty of merchantability (Count VII). They also seek indemnity from Agentry based upon breach of contract (Count IX). The defendants have provided no legal basis for their proposed indemnity claims. Except for a reference to the New Hampshire Supreme Court decision in <u>Consolidated Util. Equip. Servs., Inc. v. Emhart Mfg. Corp.</u>, 123 N.H. 258 (1983)(hereafter referred to as "<u>CUES</u>"), the defendants have offered no legal citations to demonstrate that New Hampshire recognizes a right to

_____

employer cannot be joined or sued by the third party as a tortfeasor as he cannot be liable to the employee in tort.") Accordingly, the defendants have failed to present a colorable claim against Agentry based on a right to contribution between joint tortfeasors. <u>See</u> <u>William H. Field Co. Inc.</u>, 115 N.H. at 635.

indemnity based upon the types of claims that the defendants advance here.

CUES is of little help. In that case the state court ruled that a joint tortfeasor can obtain indemnification against another only "where the indemnitee's liability is derivative or imputed by law, or where an express or implied duty to indemnify exists." CUES, 123 N.H. at 261 (citations omitted).

The facts of this case do not fall within either category. Here, the plaintiff alleges that the defendants are directly at fault. His claims against the defendants are not based upon the fault of Unifin or Agentry, but upon the defendants' own action or inaction. The defendants, therefore, are not alleged to be derivatively liable. See Hamilton v. Volkswagen of Am., Inc., 125 N.H. 561, 563 (1984); William H. Field Co., Inc., 115 N.H. at 634.

Nor have the defendants demonstrated a colorable claim based on an express or implied duty to indemnify. The defendants admit that there are no express indemnity agreements between them and Unifin or Agentry. Accordingly, they must rely upon an implied duty to indemnify. In New Hampshire, however, indemnity agreements are rarely implied. See Dunn v. CLD Paving, Inc., 140

6

N.H. 120, 122 (1995); <u>Hamilton</u>, 125 N.H. at 564. In the few cases where the New Hampshire Supreme Court has recognized an implied duty, the justification for the finding "rested on the fault of the indemnitor as the source of the indemnitee's liability in the underlying action and, conversely, the indemnitee's freedom from fault in bringing about the dangerous condition." <u>Hamilton</u>, 125 N.H. at 563-64. <u>See</u> <u>also</u> <u>Dunn</u>, 140 N.H. at 123; <u>Collectramatic, Inc. v. Kentucky Fried Chicken Corp.</u>, 127 N.H. 318, 320-21 (1985). This is not what has been alleged here.

The defendants' ability to assert their proposed claims is far from certain. In addition, the proposed claims are complex and would create jury confusion. The latter, of course, is part of the defendants' motive.

2. <u>Undue Delay</u>

Although the defendants' initial motion was timely, granting the motion would cause undue delay. Trial in this case is currently scheduled for early February 2002, just four months from now. For the following reasons, I expect that granting the defendants' motion to implead would result in at least a two year delay.

7

The third-party complaint introduces a variety of new claims that are likely to demand significant discovery. They are also certain to raise complex legal issues. For instance, the defendants' claims involve the sale of finning machines from Unifin, a Canadian company, to the defendants' predecessor, an American company. It is not clear whether the sales were subject to the Uniform Commercial Code or to Canadian law.[2] Accordingly, the third-party claims raise complex choice of law issues. In addition, at least some of the third-party claims are subject to obvious motions to dismiss and motions for summary judgment. Even assuming the litigation would proceed in a straightforward manner, significant additional time would be necessary to accommodate new discovery and briefing efforts.

Moreover, Unifin's location in Canada would create complexities likely to cause delay. For example, obtaining service of a foreign corporation frequently takes 6-12 months. In addition, the time and effort necessary to schedule depositions of current and former employees of a foreign corporation often exceed the time and effort ordinarily required

---

[2]The record indicates that the sale of one of the finning machines from Unifin to the defendants' predecessor was FOB London, Ontario and had no warranties. See Document no. 38, Exhibit C.

to depose witnesses.

Furthermore, as I will note in a forthcoming order on discovery, these defendants and their counsel have engaged in discovery delays and abuses throughout the course of this case. Therefore, the defendants' litigation tactics likely would cause additional delays beyond those expected as a result of the new claims.[3]

The plaintiff has sustained grievous injuries and deserves his day in court in early 2002.  Because the third-party complaint would delay the plaintiff's efforts to fully prosecute his case, the defendants' motion must be denied.  See Venuti v. Riordan, 702 F.2d 6, 9 (1st Cir. 1983)(no abuse of discretion in failing to join a third-party defendant under Fed. R. Civ. P. 14(a) where joinder would have meant added delay for the plaintiff).

---

[3]Since the defendants removed this case to this court, they have engaged in delaying tactics.  Defendants and their counsel have fought straightforward discovery and, despite knowledge, have released discovery responses piecemeal.  In addition, they have filed overwhelming in camera materials and have sought to obfuscate their conduct.  They required three attempts to produce meaningful privilege logs and complete answers to interrogatories.

## 3. Prejudice

The plaintiffs have asserted straightforward negligence claims against the defendants. In contrast, the defendants' third-party claims are based upon a variety of complex legal theories that threaten to complicate the case and confuse the jury. In particular, the third-party claims arising out of an alleged breach of express and implied warranties of fitness for a particular purpose and alleged contract breaches would introduce issues unrelated to those involved in the original lawsuit and render the case significantly more confusing. Because the third-party claims would prejudice the plaintiff by transforming a straightforward case into a complicated and confusing one, the defendants' motion must be denied. See United States v. Dobrowolski, 16 F.R.D. 134, 136 (D.Md. 1954)(district courts have discretion to deny impleader of third-party actions that would introduce a controversy unrelated to the plaintiff's suit and unduly complicate the case to the plaintiff's prejudice); Lacey v. United States, 98 F. Supp. 219, 220 (D.Mass. 1951)(vacating third-party complaint that would operate to confuse the original issues in the case); 6 CHARLES A. WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE § 1443 (2d ed. 1990)("Sufficient prejudice to

warrant denial of impleader may be present when bringing in a third party will introduce unrelated issues and unduly complicate the original suit").

The plaintiff also would suffer prejudice as a result of the delay that would occur if I allowed the third-party action to proceed. As discussed above, granting the defendants' motion is likely to delay the trial of the plaintiff's claims by at least two years, a result that is unacceptable, particularly in light of the nature and extent of the plaintiff's injuries. If, on the other hand, the court granted the defendants' motion, but refused to continue the trial beyond February 2002, the third-party defendants would be deprived of an adequate opportunity to prepare for trial. The prejudice that would occur under either scenario further warrants the denial of defendants' motion. See General Electric Co. v. Irvin, 274 F.2d 175, 178-79 (6th Cir. 1960); Ahern v. Gaussoin, 104 F.R.D. 37, 42 (D.Or. 1984).

The motion to implead third-party defendants (document no. 33) is denied.

**SO ORDERED.**

                                       _____
                                       James R. Muirhead
                                       United States Magistrate Judge

Date:  October 4, 2001

cc:    Mark A. Abramson, Esq.
       Debra M. Walsh, Esq.