Connors v. Suburban                    CV-95-079-M    01/26/96 P

UNITED STATES DISTRICT COURT FOR THE
                        DISTRICT OF NEW HAMPSHIRE


Dianne J. Connors, Individually
And as Administratrix of
The Estate of John M. Lipsey,
     Plaintiff,

     v.                                      Civil No. 95-79-M

Suburban Propane Company,
     Defendant and Third-Party Plaintiff,

     v.

Trianco-Heatmaker, Inc.;
Davidson, Gourley & Acker;
and George "Tony" Dube,
     Third-Party Defendants.

James W. Proctor, Administrator of
The Estate of David Edwin Bowers,
A Deceased Person, on Behalf of
The Estate of The Decedent and of
The Decedent's Mother, Janice Bowers,
     Plaintiff,

     v.                                      Civil No. 94-403-M

Suburban Propane Company,
     Defendant.

                            O R D E R


     This Order addresses motions pending in two related cases,

Connors v. Suburban Propane Co. ("Connors"), Civ. No. 95-79-M,

and Proctor v. Suburban Propane Co. ("Proctor"), Civ. No. 95-403-

M.  The defendant in both cases, Suburban Propane, filed third-

party complaints, pursuant to Fed. R. Civ. P. 14, against three third-party defendants in Connors, and has moved for leave to file third-party claims against four parties in Proctor. In Connors, the plaintiff and two third-party defendants have filed motions to dismiss Suburban Propane's third-party complaints; in Proctor the plaintiff objects to Suburban Propane's motion for leave to file third-party actions. Because the issues raised in both cases are identical, this single order will address both the motions to dismiss pending in Connors and Suburban Propane's pending motion for leave to bring third-party actions in Proctor.

## I.   FACTUAL BACKGROUND

Both Connors and Proctor arise from the same tragic event. On March 6, 1993, a water heater allegedly leaked carbon monoxide gas into a condominium unit, killing David Bowers and John Lipsey and injuring Lipsey's mother, Dianne Connors. A Suburban Propane repairman apparently performed repairs on the heating unit shortly before the incident.

Connors sued Suburban Propane in both her individual capacity and as administrator of John Lipsey's estate. In a separate suit, James Proctor sued Suburban Propane as administrator of David Bowers' estate. Plaintiffs allege that

2

the lethal carbon monoxide leak was a direct result of Suburban Propane's negligent work on the heating unit.

In Connors, Suburban Propane filed timely third-party complaints under Fed. R. Civ. P. 14, asserting causes of action for contribution against three third-party defendants: (1) Trianco Heatmaker, Inc. ("Trianco"), the successor in interest to the designer and manufacturer of the heating unit; (2) Davidson, Gourley & Acker, Inc. ("Davidson"), the management company responsible for maintenance of the condominium unit Connors occupied; and (3) George Dube, a handyman allegedly hired by Davidson to repair the heating unit. Connors moves to dismiss Suburban Propane's third-party complaints for failure to state claims upon which relief can be granted, Fed. R. Civ. P. 12(b)(6); third-party defendants Davidson and Trianco join in that motion.

In Proctor, Suburban Propane moves for leave to bring third-party contribution actions against Trianco, Davidson, Dube, and Hoover Sutton, the owner of the condominium occupied by Connors when the leak occurred. Proctor objects.

All of Suburban Propane's pending and potential causes of action for contribution are premised on New Hampshire's

3

statutorily created right of contribution.  N.H. Rev. Stat. Ann. ("RSA") § 507:7-f & g (Supp. 1994).

## II.  DISCUSSION

### A.  RSA 507:7 and Fed. R. Civ. P. 14

Connors and Proctor argue that Suburban Propane may not bring third-party actions for contribution in this diversity suit because New Hampshire law applies, and under RSA 507:7-f & g, a defendant may not, without the express consent of the plaintiff, maintain a cause of action for contribution prior to resolution of the plaintiff's principal action.  Neither Connors nor Proctor consents to the third-party actions.

Federal Rule of Civil Procedure 14, on the other hand, specifically allows impleader of third parties:  "At any time after commencement of the action a defending party, as a third-party plaintiff, may cause a . . . complaint to be served upon a person not a party to the action who is or may be liable to the third-party plaintiff."  Fed. R. Civ. P. 14(a).  Rule 14 does not operate to create causes of action, it merely prescribes a method for bringing causes of action already recognized under applicable statutory or common law.  Toberman v. Copas, 800 F. Supp. 1239, 1241-42 (M.D. Pa. 1992).

4

Because these are diversity cases, the rules of decision of the forum state, New Hampshire, govern potential liabilities among joint tortfeasors.  Erie R.R. v. Tompkins, 304 U.S. 64 (1938).  In 1986, the New Hampshire Legislature created the statutory cause of action for contribution among joint tortfeasors.  N.H. Rev. Stat. Ann. § 507:7-f & g.  Section 507:7-f reads:

> [A] right of contribution exists between or among 2 or more persons who are jointly and severally liable upon the same indivisible claim, or otherwise liable for the same injury, death or harm, whether or not judgment has been recovered against all or any of them.  Except as provided in RSA 507:7-g, I and IV, the right of contribution may be enforced only by a separate action brought for that purpose.

N.H. Rev. Stat. Ann. § 507:7-f(I) (emphasis added).

With two exceptions, then, a third-party contribution claim must be brought in an action separate from the principal action.  If judgment has been rendered against a defendant in the principal action, the cause of action for contribution arises and "must be commenced [in a separate action] within one year after the judgment becomes final."  N.H. Rev. Stat. Ann. § 507:7-g(III).  If, on the other hand, judgment has not been recovered in the principal action, one of two conditions must be fulfilled before a contribution cause of action arises:

5

> If no judgment has been rendered, the person bringing the action for contribution must have either (a) discharged by payment the common liability within the period of the statute of limitations applicable to the claimant's right of action against that person and commenced the action for contribution within one year after payment, or (b) agreed while the action was pending to discharge the common liability and, within one year after the agreement, have paid liability and commenced an action for contribution.

N.H. Rev. Stat. Ann. § 507:7-g(III). In each circumstance described, the defendant must bring the contribution cause of action in a separate suit, the principal suit having been either settled or never commenced by the potential plaintiff.

The single exception to the "separate action" rule of section 507:7-f(I) applicable here is found in section 507:7-g(IV):

> <u>[I]f and only if the plaintiff in the principal action agrees</u>, a defendant seeking contribution may bring an action in contribution prior to the resolution of the plaintiff's principal action, and such action shall be consolidated for all purposes with the principal action.

N.H. Rev. Stat. Ann. § 507:7-g(IV)(c) (emphasis added).

Simply stated, New Hampshire law prescribes four ways in which a defendant may bring a contribution cause of action against a third-party, but restricts a defendant's ability to

6

bring a contribution suit prior to resolution of the plaintiff's principal case to those circumstances in which the plaintiff in the principal action consents. Thus, there appears to be a direct conflict between Rule 14 and RSA 507:7, since Rule 14 allows a defendant to implead third-parties without the consent of the plaintiff in the principal action. Resolution of the pending motions turns on the nature and effect of these competing rules.

### B. Analytical Framework

Any discussion of the law applicable in a diversity case routinely begins with the rule of Erie R.R. v. Tompkins, 304 U.S. 64 (1938): When sitting in diversity a federal court must apply the "substantive" law of the forum state according to the Federal Rules of Civil Procedure. Commercial Union Ins. Co. v. Walbrook Ins. Co., 41 F.3d 764, 772-73 (1st Cir. 1994). A corollary to Erie's rule provides that when a procedural rule contained in a state statute conflicts with a valid Federal Rule of Civil Procedure, the Federal Rule will preempt the state procedural requirement. Hanna v. Plumer, 380 U.S. 460, 469-71 (1965); Martinez v. Hospital Presbiteriano, 806 F.2d 1128, 1134 (1st Cir. 1986). Therefore, if the provisions of sections 507:7-f & g are

7

"procedural" in nature, the state's consent requirement is not applicable in this diversity suit, and Suburban Propane may implead third-party defendants under Rule 14 without plaintiff's consent. If, on the other hand, the consent requirement found in sections 507:7-f & g is "substantive" in nature, it does apply in this diversity suit, and it directly conflicts with the plain meaning of Rule 14.

Where a direct conflict exists between an applicable Federal Rule of Civil Procedure and a state rule of decision, the Rules Enabling Act, 28 U.S.C. § 2072, determines which rule governs. Hanna, 380 U.S. at 463-64; Walker v. Armco Steel Corp., 446 U.S. 740, 750 n.9 (1980) (if state substantive law directly collides with a Federal Rule of Civil Procedure, Hanna's Rules Enabling Act analysis applies). That is, Rule 14 will govern third-party impleader for contribution if its application comports with the Rules Enabling Act, which reads:

> The Supreme Court shall have the power to prescribe general rules of practice and procedure . . . for cases in the United States district courts . . . . Such rules shall not abridge, enlarge, or modify any substantive right.

28 U.S.C. § 2072 (emphasis added). So, to the extent application of Rule 14 would not abridge, enlarge, or modify any substantive right enjoyed by the parties under the applicable state law,

8

Suburban Propane may implead third-party contribution defendants pursuant to Rule 14 and, in effect, "accelerate" its right to contribution created by state statute. If, on the other hand, application of Rule 14 would abridge, enlarge, or modify substantive rights created by the New Hampshire contribution statute, Suburban Propane may not rely on Rule 14 to implead the third-party contribution defendants in derogation of state law.

## C.    Erie Analysis

The first step in determining whether state law precludes Suburban Propane from impleading third parties pursuant to Fed. R. Civ. P. 14 is to decide whether the consent provision of the state contribution statute applies at all in this diversity action. If the provision is "substantive" it applies; if it is "procedural" it is displaced by Rule 14. Erie, 304 U.S. at 78; Commercial Union Ins., 41 F.3d at 772-73. Of course, the Erie distinction between "substantive" rules of decision and "procedural" rules is, necessarily, a somewhat artificial bifurcation of the law. See Hanna, 380 U.S. at 465-66. And, although these labels still retain many of their talismanic qualities, Erie's progeny have largely abandoned any attempt to separate state laws into these two convenient categories. See

9

<u>Hanna</u>, 380 U.S. at 465-66; <u>Guaranty Trust Co. v. York</u>, 326 U.S. 99, 108 (1945).

Instead, "choices between state and federal law are to be made not by the application of any automatic `litmus paper' criterion, but rather by reference to the [two] policies underlying the Erie rule." <u>Hanna</u>, 380 U.S. at 467 (citation omitted); <u>Commercial Union Ins. Co.</u>, 41 F.3d at 773. The <u>Erie</u> rule is rooted in part in a policy that declares it unfair for the character or result of the litigation materially to differ solely because the suit was brought in federal rather than state court. <u>Hanna</u>, 380 U.S. at 467; <u>Commercial Union Ins. Co.</u>, 41 F.3d at 773. <u>Erie</u> was also in part a reaction against the practice of forum shopping that had grown up in response to the rule of <u>Swift v. Tyson</u>, 16 Pet. 1. <u>Hanna</u>, 380 U.S. at 467; <u>Commercial Union Ins. Co.</u>, 41 F.3d at 773.

Viewed in light of the twin policies underlying <u>Erie</u>, the court concludes that the consent requirement of section 507:7-g(IV)(c) is applicable in this diversity suit. Allowing a defendant to implead third-party contribution defendants in the principal action without restriction would materially alter the character, and perhaps even the outcome, of the litigation, as compared to the character and outcome were the same case

10

litigated in state court.  If third-party defendants were impleaded, the right to seek contribution would be accelerated, effectively providing the defendant a present cause of action that he would not possess in state court.  Impleader via Rule 14 would also transform the suit from a relatively simple two-party negligence action into a complex, expensive, and potentially confusing multi-party case.

In addition, it is self-evident that allowing defendants to immediately implead in federal court parties that could not be impleaded in state court, and to immediately pursue a cause of action under state law in federal court that could not be pursued under state law in state court, would encourage forum shopping through the mechanism of removal in diversity cases.  Diverse defendants with potential contribution claims under RSA 507:7 would be encouraged to remove those cases to federal court to avoid the substantial limitations placed on such causes of action by the very state statute creating the cause of action in the first place.  Thus, both policies motivating the Erie doctrine strongly favor application of section 507:7-g(IV)(c) in this diversity case.

The decision to apply section 507:7-g(IV)(c) in this case is also consistent with prior rulings of this court.  Richards v.

11

Pizza Time Partners, No. C87-208-L, slip op. at 10 (D.N.H. Oct. 21, 1987) (Loughlin, J.) (holding that "this limitation placed upon a party's right to seek contribution is no less substantive than the provision allowing for contribution"); Grant v. Thomsen Equip. Co., No. C89-478-L, slip op. at 4 (D.N.H. Nov. 30, 1990) (Loughlin, S.J.) (applying consent requirement of section 507:7-g(IV)(c) in diversity case). In addition, it is consistent with the decisions of numerous other federal courts applying similar limits found in other state contribution statutes. See, e.g., Andrulonis v. United States, 26 F.3d 1224, 1234 (2d Cir. 1994); Ragusa v. Streator, 95 F.R.D. 527, 528 (N.D. Ill. 1982); Pinzer v. Wood, 82 F.R.D. 607, 609 (E.D. Tenn. 1979); Brooks v. Brown, 307 F. Supp. 907, 908-09 (E.D. Va. 1969).

The minority of decisions holding otherwise can be distinguished by their reliance on the labels of "substance" and "procedure," rather than on an analysis of the twin policies of Erie. See Lambert v. Inryco, Inc., 569 F. Supp. 908, 914 (W.D. Okla. 1980) (stating simply that "the method of enforcing that right [to contribution] is procedural"); Riordan v. W.J. Bremer, Inc., 466 F. Supp. 411, 417 (S.D. Ga. 1979) (stating simply that the rule against impleader in state contribution action "is procedural and not substantive").

12

That the consent provision of section 507:7-g is applicable in this case is also supported by comparing section 507:7-g(IV)(c) with analogous state statutes of limitations, which have long been held to apply in diversity suits. Guaranty Trust, 326 U.S. at 110; Ragan v. Merchants Transfer & Warehouse Co., 337 U.S. 530 (1949); Gluck v. Unisys Corp., 960 F.2d 1168, 1180 (3d Cir. 1992); Vincent v. A.C. & S., Inc., 833 F.2d 553, 555 (5th Cir. 1987); D'Onofrio Constr. Co. v. Recon Co., 255 F.2d 904, 907 (1st Cir. 1958). Statutes of limitations, of course, define when a cause of action dies. After the limitations period runs, a plaintiff can no longer bring suit. In an analogous manner, the consent provision of section 507:7-g(IV)(c) defines when a cause of action for contribution is born; until its conditions are satisfied, a third-party plaintiff cannot bring suit. This court "cannot give [a cause of action] longer life in federal court than it would have had in the state court . . . consistently with Erie R. Co. v. Tompkins." Ragan, 337 U.S. at 533-34. Like a state statute of limitations, section 507:7-g(IV)(c) defines the lifetime of a cause of action and, for that reason as well, is applicable in this diversity action.

13

## D.    Rules Enabling Act Analysis

The determination that section 507:7-g(IV)(c) applies does not end the inquiry into the applicability of Fed. R. Civ. P. 14 to this action.  The <u>Erie</u> doctrine cannot operate to invalidate or render inapplicable a Federal Rule of Civil Procedure.  <u>Hanna</u>, 380 U.S. at 470.  Rather, the <u>Erie</u> inquiry merely determines to which "substantive" law the Federal Rules of Civil Procedure will apply.  If, as here, the applicable state law directly conflicts with the applicable Rule, the validity of the Rule turns on whether its application is consistent with the Rules Enabling Act.  As noted, that Act provides that the Federal Rules of Civil Procedure "shall not abridge, enlarge, or modify any substantive right."  28 U.S.C. § 2072; <u>Hanna</u>, 380 U.S. at 470-71; <u>Stewart Org. v. Ricoh Corp.</u>, 487 U.S. 22, 27 n.5 (1988) (Rules of Civil Procedure that conflict with substantive law must be measured against the Rules Enabling Act requirements).

Finding that section 507:7-g(IV)(c) is "substantive" for <u>Erie</u> purposes does not render the Rules Enabling Act analysis superfluous.  "The line between `substance' and `procedure' shifts as the legal context changes," <u>Hanna</u>, 380 U.S. at 471, and neither term "represents the same invariants." <u>Guaranty Trust</u>, 326 U.S. at 108.  Thus, whether a "substantive" right

14

would be affected by application of the Rules of Civil Procedure is a very different question than whether a state law right is "substantive" or "procedural." When, as here, the "situation is covered by one of the Federal Rules, the question facing the court is a far cry from the typical, relatively unguided Erie choice." Hanna, 380 U.S. at 471. In fact, the court has before it a well-developed body of case law to guide its Rules Enabling Act decision.

Whether Rule 14's charge that a defendant may implead any party "who is or may be liable to the third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff," Fed. R. Civ. P. 14(a), does violence to substantive rights created by Section 507:7-f & g depends, of course, on the nature of the rights created by the state statute. Courts considering the validity of Rule 14 as applied to state statutes creating contribution causes of action have faced two distinct types of statutes. Some state contribution statutes do not provide a defendant with a cause of action against a joint tortfeasor until that defendant has first discharged his pro rata share of common liability to the plaintiff. See discussion infra part II.D.1. Other statutes allow a defendant to bring an action for contribution against a joint tortfeasor only upon a joint

15

judgment in favor of the plaintiff against the tortfeasors.  <u>See</u> discussion <u>infra</u> part II.D.2.  Rule 14 has consistently been held to have different effects on substantive rights depending on which of these two types of contribution statutes is being applied.

### 1.    Contribution Conditioned Upon Discharge of Common Liability

When a state contribution cause of action is conditioned only upon the original defendant discharging common liability to the original plaintiff, Rule 14 has been held to permit impleader of third-party defendants.  Used in this manner, Rule 14 "accelerates" the defendant's contribution cause of action against third-party defendants consistently with the Rules Enabling Act.  <u>See</u> 6 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1451 (1990); 3 James W. Moore et al., Moore's Federal Practice ¶ 14.08 (2d ed. 1995); Jack H. Friedenthal et al., Civil Procedure § 6.9 (1985); <u>Andrulonis v. United States</u>, 26 F.3d 1224, 1234 (2d Cir. 1994);  <u>Williams v. Ford Motor Credit Co.</u>, 627 F.2d 158, 160 (8th Cir. 1980); <u>United States Surgical Corp. v. John K. Pulsifer & Co.</u>, 119 F.R.D. 18, 20 (D. Md. 1988); <u>Holzhauser v. Container Corp. of Am.</u>, 93 F.R.D. 837, 839-40 (W.D. Ark. 1982); <u>Lambert v. Inryco, Inc.</u>, 569 F.

Supp. 908, 914 (W.D. Okla. 1980); Jeub v. B/G Foods, Inc., 2 F.R.D. 238, 241 (D. Minn. 1942).

A contribution cause of action conditioned upon discharge of common liability grants the third-party defendant the right not to be held liable for the loss of another defendant until that loss has actually been incurred. In apparent derogation of that right, Rule 14, by its terms, would allow a defendant to implead a party "who is or may be liable," clearly contemplating the present enforcement of conditional or even inchoate rights. Wright & Miller, supra, at § 1451.

Yet, if impleader is allowed via Rule 14, thereby "accelerating" contribution actions under such state laws, any prejudicial effect on a third-party defendant's state-created right to be free from liability until the third-party plaintiff has first satisfied the common liability to the plaintiff can be entirely mitigated through procedural devices available to the trial judge. "In the event that liability is determined to be against the third-party defendant, the Court may either grant a conditional judgment against the third-party defendant that does not become enforceable until third-party plaintiff satisfies the original judgment or may permit judgment to be entered but stay execution until the third-party plaintiff can demonstrate that it

17

paid." Holzhauser, 93 F.R.D. at 839; see also Andrulonis, 26 F.3d at 1234. Through such devices, then, federal courts can promote the basic purpose of Rule 14 — to determine in a single proceeding all rights dependent on a common set of facts — without abridging, enlarging, or modifying the substantive rights granted by the state contribution statute.

Thus, under state contribution statutes that condition the cause of action upon discharge of common liability to plaintiff, Rule 14 can be used to accelerate the defendant's cause of action for contribution without abridging, enlarging or modifying substantive rights in violation of the Rules Enabling Act. See Wright & Miller, supra, at § 1451; Moore, supra, at ¶ 14.08; Andrulonis, 26 F.3d at 1234; Williams, 627 F.2d at 160. The third-party defendant's "status will not be affected." Moore, supra. Rather, the time when the defendant's claim is presented will simply be accelerated. Id. (citing cases).

### 2. Contribution Conditioned Upon Joint Judgment

In contrast to statutes that condition the contribution cause of action on a defendant's discharge of common liability to the plaintiff, statutes that allow contribution claims between joint tortfeasors only upon a joint judgment against those

tortfeasors cannot be "accelerated" without necessarily modifying substantive rights of the parties in violation of the Rules Enabling Act. See Wright & Miller, supra, at § 1448 (collecting cases); Moore, supra, at ¶ 14.11 (collecting cases); D'Onofrio Constr. Co. v. Recon Co., 255 F.2d 904, 906 (1st Cir. 1958); Travelers Ins. Co. v. Busy Elec. Co., 294 F.2d 139, 145-46 (5th Cir. 1961); McPherson v. Hoffman, 275 F.2d 466, 470 (6th Cir. 1960).

Statutes that condition the contribution cause of action on a joint judgment bestow upon the plaintiff in the principal action the substantive right to control which parties become part of the action. D'Onofrio, 255 F.2d at 906 ("Rule 14 cannot be used when the injured party has chosen to sue only one of the tortfeasors severally."); Moore, supra. "[T]he law is said to allow plaintiff to choose defendants and give plaintiff the right to sue less than all of the tortfeasors against whom he might have a valid claim." Wright & Miller, supra. Applying Rule 14 to allow a single defendant to implead other third-party contribution defendants would abridge the plaintiff's substantive right to exclude parties he or she does not wish to sue, and that practice would, concomitantly, "enhance the substantive rights of the original defendant over what is given by state law."

19

<u>D'Onofrio</u>, 255 F.2d at 906.  When the contribution cause of action is conditioned upon joint judgment, then, application of Rule 14 to permit impleader would violate the Rules Enabling Act.

### 3.    New Hampshire Law of Contribution

New Hampshire's statute creating contribution causes of action does not fall squarely within either category of contribution statute previously considered by the courts. Rather, it is something of a hybrid of the two types of contribution statutes commonly enacted.  Section 507:7-(f), for example, allows a defendant to bring a contribution cause of action whether or not judgment has been rendered against that defendant.  But, when, as is the case here, no judgment has been rendered in the principal action, a defendant may bring a contribution action against a third-party only if common liability to the plaintiff has first been discharged through settlement or some other agreement.  § 507:7-(g)(III).  If this were the only condition to bringing a contribution cause of action, Rule 14 could be invoked, consistently with the Rules Enabling Act, to "accelerate" the defendant's state-created right to contribution.

New Hampshire's contribution statute does, however, contain another explicit condition. A defendant may bring an action for contribution prior to the resolution of the principal action, and have the third-party action consolidated with the principal action, "if and only if the plaintiff in the principal action agrees." N.H. Rev. Stat. Ann. § 507:7-g(IV)(c). Section 507:7-g(IV)(c) makes explicit the right that is usually implicit in contribution statutes requiring joint judgment: The plaintiff has the substantive right to control which parties may participate in the litigation. To allow Suburban Propane to implead third-party defendants under Rule 14 in this case would necessarily abridge Connors' and Proctor's substantive rights to exclude third-party defendants, rights they have asserted by suing only Suburban Propane and by expressly objecting to the joinder of additional parties.[1]

Because its use to implead third-party contribution defendants would violate the Rules Enabling Act (by limiting

---

[1] It is important to note that the state statutory framework also disallows defendants from circumventing the consent requirement by bringing a simultaneous but separate suit for contribution in state court, removing both suits to federal court, and consolidating the actions once there. As stated above, section 507:7-g(IV)(c) is the only mechanism through which a defendant may bring a contribution action simultaneously with the principal action. Therefore, the plaintiff's consent is always required if the actions are to be joined.

21

plaintiffs' and enlarging defendant's substantive rights under applicable state law), Fed. R. Civ. P. 14 cannot be invoked, without plaintiffs' consent, to bring a contribution action premised on N.H. Rev. Stat. Ann. § 507:7-f & g against a third-party defendant in this diversity action.

## III. CONCLUSION

For the reasons stated above, Suburban Propane may not implead third-party defendants in contribution actions pursuant to Fed. R. Civ. P. 14. Accordingly, Connors' motion to dismiss (document no. 19) is granted, Davidson's motion to dismiss (document no. 23) is granted, Trianco's motion to dismiss (document no. 25) is granted, and Suburban Propane's motion for leave to file third-party actions (document no. 11) is denied.


        SO ORDERED.


                                        _____
                                        Steven J. McAuliffe
                                        United States District Judge

January 26, 1996

22

```
cc:   Philip R. Waystack, Jr., Esq.
      Paul F. Kenney, Esq.
      Joseph M. McDonough, III, Esq.
      James E. Owers, Esq.
      Robert J. Meagher, Esq.
      George A. Dube
      Claude T. Buttrey, Esq.
      James H. Gray, Jr., Esq.
```